## STATE ex rel. RUTH v. WALKER et al.

No. 17764—Opinion Filed Dec. 7, 1926.

(Syllabus.)

. **Elections — Primary Elections — Filing Statement of Campaign Expenditures as Prerequisite to Issuance of Certificate of Nomination.**

Sections 6112 and 6119, C. O. S. 1921, are part of the primary election law of the state and deal with the limitation of expenditures a candidate who presents his name to the electorate is allowed to expend in his campaign. By said sections, all candidates are required to file a statement showing their expenditures, with the proper election boards as provided by the said statutes. This requirement is a duty the performance of which is made antecedent to the right of the election board to issue a successful candidate in such primary a certificate of nomination.

**Same—Corrupt Practices Act— Penalties for Violation.**

Section 6121, C. O. S. 1921, is also a part the primary law of the state, and it and

the above mentioned sections are that part thereof which is commonly referred to as the Corrupt Practices Act. Said last named section provides:

"Any person upon whom a duty is imposed by this chapter, or who is required to file a report, shall faithfully perform such duty, and file such report, stating accurately the information required. Any one who mistakes the amount of money, or fails to disclose fully the facts as to any gift, promise, treat, reward, favors, or any valuable thing given, sha'l be deemed guilty of a misdemeanor, and, upon conviction, shall be fined not less than fifty, nor more than one thousand dollars, and confined in the county jail not less than three nor more than twelve months; and should he be a nominee, he shall not be allowed to have his name appear upon the ballot, and should it be printed before such conviction, he shall be denied the right to hold office, if elected. If it be a person elected to an office in the general election, he shall not be entitled to hold such office. Any candidate who expends more money, either in person or through agents, committees or friends, than the limit prescribed herein, shall, in addition to the punishment hereinbefore prescribed, be thereafter barred from holding office in this state."

This section is broad and comprehensive. It carries several penalties. The fine and imprisonment provided for therein upon conviction is penal in the ordinary conception of the term; but the statute has a preventive or enforcement penalty, in this, that should the person violate the provisions of the first-named statutes which this section penalizes, it renders such person disqualified, should he be a nominee, to have his name placed upon the general election ballot; and further, it provides that if the name of such person as a nominee be printed before conviction under this section, and he should be elected, he shall be denied the right to hold the office to which elected. It is further penal in that it provides that any person so convicted, in addition to the other penalties prescribed, shall be thereafter barred from holding office in the state of Oklahoma

3. **Same—Criminal Prosecution and Conviction of Candidate as a Prerequisite to Disqualification to Hold Office.**

This statute is the only provision of the law to enforce the inhibitions against excessive expenditures in primary elections. These statutes are exclusive. A candidate in such a primary election, who receives the requisite number of votes to be the nominee and the requisite number of votes to be declared elected in the general election, cannot be prevented from taking the oath of office and performing its duties and functions until the provisions of said enforcement statute

have been invoked by a prosecution duly and regularly instituted, as in other cases where the criminal laws of the state are alleged to have been violated, and under the said section the disqualification follows by reason of the conviction. There is no other section to be found in any of the provisions of the so-called Corrupt Practices Act which renders a person so nominated and so elected disqualified to hold the office, and this preventive remedy, which must follow a conviction, is exclusive. A court of equity, being primarily concerned with property rights and not political rights, has no jurisdiction to pass upon the questions where the relief sought by the bill follows as an incident to a conviction under the penal statutes in the bill pleaded.

Error from District Court, Oklahoma County; Sam Hooker, Judge.

Action by the State on the relation of C. H. Ruth against Art Walker et al., members of State Election Board, and C. C. Childers. Judgment for respondents, and relator brings error. Affirmed.

C. H. Ruth, for plaintiff in error.

Geo. F. Short, Atty. Gen., for State Election Board.

Lydick & McPherren, for C. C. Childers.

Opinion by BRANSON, V. C. J. Herein is presented error from the district court of Oklahoma county. The cause as filed in said court is styled "State of Oklahoma ex rel. C. H. Ruth, Relator, v. Art Walker, W. C. McAlister, and Claud Baker, as the State Election Board of the State of Oklahoma, and C. C. Childers, Respondents." The parties are referred to, therefore, as relator and respondents.

The judgment of the district court denied the relator the relief sought. He therefore prosecutes error, and the cause in this court is styled as in the court below.

The cause was filed in the trial court on the 14th day of August, 1926.

Under the law, known as the Mandatory Primary Law of the state, a primary election was held on the first Tuesday in August throughout the state. The purpose of such a primary is that the electors of the state, affiliated with the recognized political parties, may, by ballots cast, express a preference for, and nominate candidates for various state and county offices of the state. Under the said law, the respondents, designated above as the State Election Board of the state of Oklahoma, were required and did cause to be printed and distributed throughout the state the ballots to be used by the electors in the said election. which said ballots were

through the proper local county officers distributed to the election officers in each voting precinct and by them to the electors who appeared for the purpose of voting. In addition to such duty, the said primary law required that returns of the results of said election be certified by the proper officers to the said respondents referred to as the State Election Board, and said respondents were required to canvass said returns and issue a certificate of nomination to the person or persons shown thereby to have received for each office, to fill which a candidate was to be nominated, a plurality of the votes.

Among numerous other state officers required by law to be nominated at the said primary, was a member of the Corporation Commission of the state. There were several candidates before the electors. Among them was the respondent, C. C. Childers, and the relator, C. H. Ruth. While there were other candidates for this office, we deem it unnecessary to name them, as they do not appear in the instant litigation.

There was presented to the district court the petition of the relator and a demurrer thereto by the respondents. The demurrer was heard and sustained. The relator elected to stand on his petition, whereupon the district court on the 7th day of September, 1926, entered judgment as follows (omitting the preliminary parts):

"It is thereupon considered, ordered, adjudged, and decreed that the demurrer of the respondents herein to the petition, of the relator be and the same is sustained, and the relator not asking leave of court to amend the said petition, the same is dismissed with costs against the relator, to which action on the part of the court in sustaining the said demurrer and dismissing the petition herein the relator excepts and gives notice in open court of an appeal from the said judgment to the Supreme Court of the state of Oklahoma, which appeal is allowed."

Epitomizing the allegations made by the relator in his petition, they are:

That the respondents Art Walker, W. C. McAlister, and Claud Baker, referred to as the State Election Board, constitute the State Election Board of the state of Oklahoma, and among its other authority and duty is to issue certificates of nomination and election to the persons nominated and elected to state offices; that the relator was a candidate before the electors at the said primary for nomination for Corporation Commissioner, and that the respondent C. C. Childers was a candidate on the same ticket, to wit, the Democratic ticket, for the same office at the same primary; that but one person who i

a candidate before the electors at said primary was entitled to a certificate of nomination on the Democratic ticket and that such person is the only person entitled to be placed upon the general election ballots to be used by the electors in the election required by law to be held the first Tuesday in November, 1926, on the Democratic ticket, and that the candidate to whom such certificate of nomination is authorized to be issued must be qualified for such nomination and qualified to go before the electors in the November election and qualified to hold the office if successful.

It further alleges in substance:

That from the returns filed with the said State Election Board, it appears that the respondent C. C. Childers received a plurality of the votes cast by the electors at the said primary for the said office and that he, therefore, prima facie was entitled to the certificate of nomination; that relator is advised that he received the next highest number of votes in said primary and that but for the illegal and unlawful expenditures of money by the respondent Childers, relator would have received the plurality of votes cast, and that therefore in equity and good conscience relator is entitled to be declared by said respondents—the said State Election Board—the Democratic nominee and given a certificate from said board to that effect; that the law of the state limits campaign expenditures by any candidate for the office here in question to $1,500, and that relator did not expend that amount; that the said respondent Childers is disqualified to receive the certificate of nomination and disqualified to have his name printed as the nominee on the ballots to be used in the November election for these reasons in substance, to wit:

That section 6112, C. O. S. 1921, being that part of the primary law commonly known as the Corrupt Practices Act, requires that candidates file an itemized statement of their expenditures.

That section 6121, C. O. S. 1921, provides in effect that any person upon whom a duty is imposed by this chapter (which section is found in the same chapter as the said section 6112) to file a report of expenditures shall file such report and that anyone who fails to disclose fully the facts as to such expenditures shall be guilty of a misdemeanor, and

"upon conviction shall be fined not less than fifty nor more than one thousand dollars and confined in the county jail not less than three nor more than twelve months; and should he be a nominee, he shall not be allowed to have his name appear upon the ballot, and should it be printed before such conviction he shall be denied the right to hold office. Any candidate who expends more money either in person or through agents, committees or friends, than the limit prescribed herein shall in addition to the punishment hereinbefore prescribed be hereafter barred from holding office in this state."

The relator further pleads that the respondent Childers did file a report as required by the said section 6112, but that said report was in truth and in fact incorrect, and alleges and charges that he expended a large amount in excess of that reported.

Relator further pleads that the respondent Childers secured the services and activity in behalf of his candidacy of persons too numerous to recite herein, all of which, as evidently he contends, should have been a part of and considered as an expenditure within the meaning of the limitations thereof.

The relator prays that the respondent Childers be required to make disclosure to the court of the names of the persons, firms, or corporations and their locations, etc., who printed his literature in the primary campaign, together with the amount paid therefor; that he be required to set forth the kind and character of stationery purchased and used, the dates of telegrams and telephone messages and to whom sent, the names and residences of the persons to whom he paid money and the amount paid to each, the names of the newspapers, periodicals, or advertising mediums in which he carried political advertisements.

Second: That the said respondents, the Election Board, be restrained from issuing a certificate of nomination to the said Childers.

Third: That the respondents, the said Election Board, be restrained from causing to be printed on the ballots to be used in the general election in November, 1926, the name of the respondent Childers.

Fourth: That in the event the general election held under the law the first Tuesday in November, 1926, shall have been held prior to the final determination of this cause, that the respondent, the State Election Board, be restrained from issuing to the said Childers any certificate of election as Corporation Commissioner; and

Fifth: That the said respondent Childers be enjoined from taking the oath of office if elected as Corporation Commissioner of this state or from exercising the duties of said office and that the said Childers be barred from holding any office in the state of Oklahoma.

The demurrer asserted that the allegations

did not contain facts sufficient to constitute a cause of action; that the relator had no capacity to sue in the name of the state and that the district court had no jurisdiction of the subject-matter of the action.

This cause was submitted to this court on appeal briefs and oral arguments November 30, 1926. The relator presented the oral argument personally in support of his petition in error. He introduced his oral argument by the statement, in substance, that this court could decide this cause, in his judgment, either way—that is, reverse the district court or affirm the district court —without doing violence to the law.

If we agreed with this statement of the relator in presenting his oral argument, there would be little further for us to discuss, for it is well established that this court always presumes that the judgment of the trial court is in accordance with the law, and one who prosecutes error has the affirmative to show that the judgment of the trial court on the matters assigned as error was contrary to the law. But, since we do not agree with the relator as to this statement, we deem it imperative to determine as to whether or not the judgment of the trial court was correct.

The question is discussed in the briefs that the relator cannot maintain this action in the name of the state. The only authority cited in support of relator's contention from this court is the case of United States v. Choctaw, Oklahoma & Gulf Railway Company, 3 Okla. 471, 41 Pac. 729. In the body of that opinion this court (the Territorial Supreme Court) said:

"Every action must be prosecuted in the name of the real party in interest (the state statute—ours). If the relators, therefore, are entitled to prosecute this action (it must be noted that the action is brought in the name of the United States on the relation of certain private individuals—ours), it is because they are the real parties in interest. When the question is one of public right and the object of the proceeding is to compel the performance of a public duty, to restrain the commission of a public wrong, the people are regarded as the real party, and the action must be brought in the name of the territory upon the relation of the prosecuting officer, or upon the relation of some member of that public, who has a personal, special, or peculiar interest in the result as a part of the public. * * * The interest of the relators must appear in the petition."

The rule announced in the last line of the quotation does not appear from the petition filed in the instant case, for the re-

lator does not allege that he received the next highest number of votes, but merely alleges that on information and belief he received the next highest number of votes; but, further, it is conceded that the relator would not have been entitled to the certificate of nomination even if the respondent Childers were held disqualified. An allegation which goes to the right of a person as relator to bring an action must state his personal interest as a fact and not the indefinite allegation of information and belief.

There is no statute of the state cited that would authorize the trial court to make the requirements of the respondent Childers as relator demands in the first prayer of his petition. All rights and remedies governing elections in Oklahoma are statutory. Relator does not cite any statute and we fail to find any which requires that a candidate before the electorate shall either make or be required to make disclosure of his expenditures to any court or tribunal other than —if a candidate for a state office—to the State Election Board; if a candidate for a county office, to the county election board.

It was admitted in oral argument that his demand for an injunction, as contained in his second prayer, that a certificate of nomination be not issued to the said Childers, has become moot, as that was done by the said election board in due and regular performance of its duty.

It was admitted in oral argument that the demand of the relator contained in his third prayer, to the effect that the name of the respondent Childers be not printed on the ballots for the November election, has become moot.

It was admitted in the oral argument that the demand contained in the fourth prayer of the relator's petition, to the effect that in the event the November election shall have been held prior to the final determination of this cause that the election board be restrained from issuing to the respondent Childers a certificate of election, cannot be sustained for that the State Election Board, under the law, submits the returns as to state officers to the Legislature of the state which convenes the first Tuesday in January, 1927, and that the Legislature as a canvassing board examines the returns and determines and declares who was elected by the electors of the state at the November election to fill the various state offices, and we find no statute and none is cited which leaves any discretion in any court or in the respondents, the State Election Board, to

issue any certificate of election until the Legislature has canvassed the returns and declared who has been elected, and we find nothing that authorizes the courts up to that point to interfere with the functions prescribed for the State Election Board, and the Legislature when regularly convened.

The fifth and the last prayer of relator is that the respondent Childers be perpetually enjoined from taking the oath of office as Corporation Commissioner of this state or performing any of the duties or functions of said office, and that he be perpetually barred from holding any office in this state.

The question then is, Did the trial court, on the allegations of the petition, have any jurisdiction to enter such order or orders as prayed?

Without discussing the contentions made by the counsel in the briefs, we feel it not amiss to state that it was admitted in oral argument that there is a dearth of authority on the question here presented. We drew from this admission that counsel concede that there are few, if any cases, from courts of last resort in this country on the question directly involved herein, to wit, the demand contained in the last prayer of relator's petition.

It must be conceded by all, however, that there are certain well-established principles of law which by analogy must be applied in all cases, and the case at bar is no exception. In discussing such recognized principles in this case (it having grown out of a heated campaign between the respondent Childers and the relator) may we not ask that it be not considered amiss by these parties or the reader, if we digress to the point of saying, in the language of the poet Browning—paraphrased: For we spoke as we saw, we report as a man must of God's work; all is love, yet all is law.

The relator seeks injunctive relief the effect of which is to restrain the respondent Childers from holding the office of Corporation Commissioner of this state and any other office in the state of Oklahoma.

We take it as having been so often stated in the authorities that equity is primarily concerned with property rights and not political rights that citation of authority is unnecessary. Unless there is a statute authorizing a court of equity to assume jurisdiction and determine matters drawn in issue such as here, the court would not be justified in enlarging the jurisdiction of a court of equity, holding that such court could determine the matter drawn in question in the instant case, in the face of certain specific statutes which clearly were intended by the legislative branch of the state government to govern, and the result of action on which statutes when called into play will ipso facto determine the rights which a court of equity in the instant case is asked to determine.

Section 6119, C. O. S. 1921, limits the expenditures of candidates for an office such as the one sought by the relator and the respondent.

Section 6112, C. O. S. 1921, requires that all candidates, whether they be declared nominees or not, file an expense account. Relator asserts that at least an attempt was made by respondent Childers to comply with this section. Therefore, this section has no application to the question we are now considering. Section 6113, C. O. S. 1921, prescribes the penalty for the failure of any candidate who has received the nomination to file an expense account as by said section provided, and also a penalty for any candidate who has been unsuccessful in securing the nomination for failure to file an expense account. These sections are part of the same chapter as section 6121, C. O. S. 1921, which last section provides:

"Any person upon whom a duty is imposed by this chapter, or who is required to file a report, shall faithfully perform such duty, and file such report, stating accurately the information required. Anyone who mistakes the amount of money or fails to disclose fully the facts as to any gift, promise, treat, reward, favors or any valuable thing given, shall be deemed guilty of a misdemeanor, and upon conviction shall be fined not less than fifty nor more than one thousand dollars, and confined in the county jail not less than three nor more than twelve months; and should he be a nominee, he shall not be allowed to have his name appear upon the ballot, and should it be printed before such conviction, he shall be denied the right to hold office, if elected. If it be a person elected to an office in the general election, he shall not be entitled to hold such office. Any candidate who expends more money, either in person or through agents, committees, or friends, than the limit prescribed herein, shall, in addition to the punishment hereinbefore prescribed, be thereafter barred from holding office in this state."

This quoted section is very broad and comprehensive. The sections mentioned theretofore impose a duty upon candidates to file expense accounts. The section quoted makes clear that such a candidate's failure to comply with the requirements of the statute by filing a report and stating accu-

rately everything contemplated by the statute as being within the meaning of expenditures shall be deemed guilty of a misdemeanor. Not only that, but the said section fixes a punishment upon conviction. As is true of all criminal statutes, no punishment is attached save and except upon conviction. The said section fixes the punishment upon conviction at a fine of not less than fifty and not more than one thousand dollars and confinment in the county jail at not less than three months and not more than twelve months, and as a further punishment, if the person convicted be a nominee, that he shall not be allowed to have his name appear upon the ballot, and as a still further punishment, that if the ballot be printed before he is convicted, he shall be denied the right to hold the office if elected. It fixes as a still further punishment that, if the conviction be of one elected to an office in the general election, he shall not be entitled to hold the office, and in the same section the cumulative penalty is prescribed, which must necessarily depend upon a prosecution and a conviction within the time allowed by law for prosecution for any alleged public offense. In addition to all the other punishments enumerated above, he shall be barred forever from holding office in this state.

We do not question that it would have been within the power of the Legislature to have authorized the trying of the question here sought to be tried in a civil action brought as the Legislature saw fit to prescribe that it should be brought. But the statutes, supra, penal in their nature, are in accord with the entire policy of the so-called Corrupt Practices Act. Such an act is not intended for the benefit of any particular individual candidate or other person. It finds its root and reason in a public policy, and that to the effect that the public shall be protected from what might be otherwise permitted, baneful influences exerted over public officers charged with the administration of the laws of the state who secured such offices by the excessive use of money. Being grounded in public policy, said statutes are both penal and preventive, and their enforcement is of public concern as distinguished from private concern. They, therefore, carried not only a penalty, as a penalty is ordinarily considered—such as fine and imprisonment—but the penalty of inability to hold the office to which elected, as well as to hold any office in the state of Oklahoma. No one part of this section of the statute is less penal in its nature than the other. The inability to hold the office,

if we should be permitted to indulge in comparisons, would be far more penal than the payment of a fine or the service of a short jail sentence. The inability to ever hold office would be far more penal in its effect than either of the others mentioned. There is nothing to be found in any section of the so-called Corrupt Practices Act which indicates that a person who has received the requisite number of votes shall be precluded from exercising the functions of the office to which he has been nominated and elected, unless the further policy of the law is carried out by officers charged with the duty under other provisions of the statutes of the state of prosecuting criminal offenses against the law of the state, and there is no statute which even indicates that any court or board can prevent such person so nominated and so elected from holding such office until through the due process of the administration of the criminal law of the state and under the rules governing the prosecution for crime such a person has been duly and regularly convicted. Then, and not until then, can a civil court take notice in any proceeding of what the law presumes, to wit, the person nominated and elected is qualified to hold office. The said statutes are in consonance with the public policy the entire law on excessive expenditures is intended to subserve. When called to the attention of the officers charged with the prosecution of the violation of the penal statutes of the state, or when called to the attention of a grand jury convened under the law, if the facts warrant it, the person accused can be formally charged, and is entitled to a trial as to his guilt or innocence by a jury, and to have a jury to determine under rules of evidence well recognized in criminal cases as to his guilt or innocence, and it is only until such guilt has been finally determined that civil courts can be called upon to take any notice that such a candidate can be precluded from holding the office to which elected.

In a case such as here, a chancellor tries the facts and renders the judgment. If the district court of Oklahoma county had taken jurisdiction, the judge would have tried the facts and might have found the respondent Childers had violated the statutes, supra, and entered an injunction restraining his going on the ballot. No one would say that judgment would preclude the officers charged with the prosecution of the criminal statutes from prosecuting him under the said penal sections. When so prosecuted under the said penal sections, a jury duly empaneled might have found him innocent. Although found

innocent of having violated the only statute on the subject, by a court and jury authorized to try a person charged with crime, he would still have been prevented from going on the ballot by a chancellor who had assumed jurisdiction without any statute granting him the same. The judgment of the trial court is affirmed.

NICHOLSON, C. J., and HARRISON, MASON, LESTER, HUNT, CLARK, and RILEY, JJ., concur. PHELPS, J., concurs in the conclusion.

Note.—See under (1) 20 C. J. p. 116, §115; p. 281, §405. (2) 20 C. J. p. 116, §115: p. 125, §136: p. 281, §405; p. 300, §457; p. 301, §459 (Anno); 29 Cyc. p. 1385. (3) 20 C. J. p. 301, §460 (Anno); 29 Cyc. p. 1385.